# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| BARBARA G. WILLS,<br>    Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant | § § § § § § § § § §<br><br>No. 1:14-CV-504 |

## ORDER AFFIRMING ADMINISTRATIVE DECISION

The Plaintiff requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. On December 22, 2014, with the parties' consent, this case was assigned to the undersigned United States Magistrate Judge for review and entry of a final judgment. (Tr. 14.)

### I. Judicial Review

Review of Social Security disability cases "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); see generally 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social Security). Substantial evidence is "more than a mere scintilla and less than a preponderance." Perez, 415 F.3d at 461 (citation and internal quotation marks omitted). It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal citation and quotation marks omitted). In applying this standard, the

1

court "may not reweigh the evidence or substitute [its] judgment for the Commissioner's." Id. (internal citation omitted). The court may affirm only on the grounds that the Commissioner stated for his decision. Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

In order to qualify for disability benefits, a claimant must suffer from a disability. See 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." Masterson v. Barnhart, 309 F.3d 267, 271 (5th Cir. 2002); see also 42 U.S.C. § 423(d)(1)(A). The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; see also Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002). The analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"]. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

See Waters, 276 F.3d at 718 (quoting Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991)); see generally § 404.1520. The claimant bears the burden of proof with respect to the first four steps of the five-step analysis. Waters, 276 F.3d at 718. If at any step the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

2

Reviewing courts give the Commissioner's decisions great deference. Id. at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. Elfer v. Texas Workforce Comm'n, 169 F. App'x 378, 380 (5th Cir. 2006); Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. See 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. See, e.g., Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

## II. Background

### A. Factual History

Plaintiff applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on October 3, 2012, alleging disability beginning June 11, 2012, due to numerous physical and mental complaints. (Tr. 23.)[1] She was fifty-five years old at

---

[1] Social Security DIB are authorized by Title II of the Social Security Act and provide income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability). In

the time of her hearing, with past relevant work as a cook in a nursing home. (Tr. 58.) Wills suffered a heart attack in 2010, and a second heart attack in 2011. (Tr. 61.) She claims she was unable to return to work after her second heart attack. (Id.)

### B. Procedural History

The agency denied Wills's application initially and on reconsideration, and therefore she requested an administrative hearing. (Tr. 161). Wills and her attorney, Adam Kassner, attended the administrative hearing before Administrative Law Judge Melinda W. Kirkpatrick ("ALJ Kirkpatrick") on January 22, 2014. (Tr. 54-104.)

### C. Administrative Decision

ALJ Kirkpatrick utilized the five step sequential evaluation process, discussed *supra,* in deciding Wills's disability claim. (Tr. 23-30.) At step one, ALJ Kirkpatrick found that Wills had not engaged in substantial gainful activity during the period from her alleged onset date of June 11, 2012, through her date of last insured status. (Tr. 25.) At steps two and three, she found that Wills had severe impairments of left knee pain, morbid obesity, moderate degenerative disc disease of the thoracic spine, and history of myocardial infarction, but concluded that these impairments did not meet or medically equal a listed impairment at step three. (Tr. 25-26.) Next, ALJ Kirkpatrick determined that Wills retained the residual functional capacity ("RFC") to perform medium work, but that she could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl,

---

contrast, SSI benefits are authorized by Title XVI of the Social Security Act and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110 (2015). Eligibility for SSI is based on proof of disability and indigence. See 42 U.S. C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. See 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382(c)(3)(A) (SSI). The law and regulations governing the determination of disability are the same for both programs. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).

and could not be exposed to unprotected heights. (Tr. 27-28.) In making this determination, ALJ Kirkpatrick concluded that Wills's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. 28).

Based on testimony from the vocational expert, ALJ Kirkpatrick determined that Wills could perform her past relevant work as a home attendant and institutional cook. (Tr. 29-20). Accordingly, ALJ Kirkpatrick determined that Wills was not disabled during the relevant period. Wills requested review of the administrative decision, however, on August 11, 2014, the Appeals Council declined review. (Tr. 1-6). Therefore, ALJ Kirkpatrick's decision serves as the Commissioner's final decision for purposed of judicial review pursuant to 42 U.S.C. § 405(g).

### III. Legal Analysis

Wills raises the following issues on appeal: (1.) whether ALJ Kirkpatrick properly discounted her credibility by, in part, considering her application and acceptance of unemployment benefits; and (2.) whether ALJ Kirkpatrick committed harmful error when she found Wills retained the RFC for medium work.

As to the issue of Plaintiff's credibility, the Commissioner argues that ALJ Kirkpatrick properly considered Wills's unemployment in conjunction with the other relevant factors. As to the second issue, the Commissioner claims that ALJ Kirkpatrick properly determined Wills's RFC for medium work, and that even if she was only capable of light work, the vocational expert identified other work she could perform.

1. Plaintiff's Credibility

A judge is required to follow what the Fifth Circuit has called an "objective-subjective"

two-step process in evaluating an applicant's subjective evidence and the applicant's credibility, if a credibility determination is necessary. Salgado v. Astrue, 271 F. App'x 456, 459, 2008 WL 828945, *2 (5th Cir. 2008). Under this two-step process to evaluate an applicant's subjective claims, the judge must first determine whether there is an impairment that reasonably produced the complained of symptoms. If the judge finds no impairment, the individual is not disabled. If an impairment is identified, the judge then considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work. Id. The judge also determines the credibility of the applicant's claims about symptoms. The two-step process is outlined in Social Security Ruling 96-7p:

> 1. [Objective] No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.
>
> 2. [Subjective] When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

S.S.R. 96-7p (1996), 1996 WL 374186. Only after these steps have been completed can the Commissioner determine a claimant's residual functional capacity. SSR 96-7p further explains,

> [s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to

> determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

SSR 96-7p, 1996 WL 374186, at *5. Although the ALJ must consider the subjective evidence of pain, it is within his discretion to determine the pain's disabling nature. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991) (per curiam) (internal citations omitted). In doing so, the ALJ can consider the following factors in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, *3. Although the ALJ is not required to "follow formalistic rules in his articulation" of credibility choices, the administrative decision should be sufficiently specific to make clear that these factors were considered. See Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Abshire v. Bowen, 848 F.2d 638, 642 (5th Cir. 1988); see also Hillman v. Barnhart, 170 F. App'x 909, 913, 2006 WL 690879, *3 (5th Cir. March 20, 2006) (holding that ALJ was *not* required to "explicitly discuss every factor set forth in the regulations . . . [when] the ALJ elicited the pertinent information from [plaintiff] . . . [and] remand would be fruitless in light of the lack

of objective medical evidence in the record to support [plaintiff]'s allegations of disabling back pain.")

Wills attacks ALJ Kirkpatrick's statement that ". . . the record indicates that claimant received unemployment benefits. Receiving unemployment benefits required the claimant to certify that she was capable of working, which further erodes the claimant's credibility regarding her allegations that she is indeed disabled." (Tr. 29.) Wills claims that this finding is in "direct violation of [the Commissioner's] own policy with regard to the significance of a claimant's receipt of unemployment benefits." (Doc. 16, p. 8.) Wills cites to an agency memorandum that states that "receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits." See Chief ALJ Memorandum, No. 10-1528, August 9, 2010. The Memorandum further states:

> . . .application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence. Often, the underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits. For instance, the fact that a person has, during his or her alleged period of disability, sought employment at jobs with physical demands in excess of the person's alleged limitations would be a relevant factor than an ALJ should take into account, particularly if the ALJ inquired about an explanation for this apparent inconsistency.
>
> Accordingly, ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment. . . "

Id.

Wills is correct that receipt or application of unemployment benefits does not preclude the receipt of Social Security benefits. However, it is a factor that the ALJ must consider. Moreover, ALJ Kirkpatrick considered other factors when weighing Wills's credibility, including performance of daily activities, the ability to walk about approximately a quarter of a

mile, performance of house and yard work, and the ability to cook complete meals. (Tr. 28.)

ALJ Kirkpatrick noted that Wills's credibility is further diminished due to the discrepancy between her subjective testimony and the medical record: "The record does not support the duration, frequency, nor severity of [Wills's] allegations." As support for this finding, she discussed the paucity of treatment records during the relevant time period, *i.e.*, June 11, 2012 through April 25, 2014. (Tr. 28.) Although Wills sought medical treatment on six occasions during this two-year period of alleged disability, two of those medical visits were for routine blood work. (Tr. 447-456.) Thus, Wills sought medical treatment only four times during the relevant two-year period of alleged disability: for foot pain on June 11, 2012 (her alleged disability date) after admitting she bowled on two consecutive nights (Tr. 28, 373); on March 15, 2013—approximately nine months later—with Russell Cowan, M.D., after burning her leg with hot water (Tr. 462-465); on April 29, 2013 with James Donohue, M.D., for a check-up and referral to a cardiologist (Tr. 390); and on May 28, 2013, with Dave Chawla, M.D., for another follow-up visit. (Tr. 457-461) (Dr. Chawla noted normal blood pressure, regular heart rate and rhythm, and that Wills reported no chest or cardiovascular pain, no shortness of breath, and that she was "feeling well").

ALJ Kirkpatrick discussed additional evidence to support her determination that Wills's subjective opinion evidence be given diminished weight, including a consultative medical exam report dated January 3, 2013. (Tr. 29). The consultative examiner, Tony Shallin, M.D., specifically noted that although Wills alleged disability due to congestive heart failure diagnosed in January 2010 and left knee pain, all relevant medical records failed to show a diagnosis of congestive heart failure. (Tr. 29, 379). He also noted that despite her claim of disabling

9

congestive heart failure since 2010, she continued to work until June 2012, and only discontinued working because she was laid off. (Tr. 29, 379). See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995) (claimant's ability to work while experiencing an impairment suggests that it is not disabling). Furthermore, Dr. Shallin noted that "she was not able to tell me what physical symptom limited her function." (Tr. 379). Overall, his examination findings were relatively normal, including full 5 out of 5 strength in all groups tested, normal range of motion (ROM) in all extremities, and non-tender back, but with a slow and slightly wide-based gait. (Tr. 29, 381). Dr. Shallin noted her morbid obesity and myocardial infarction without any evidence of congestive heart failure, pointed out that her hypertension was, at that time, poorly controlled (*contra* Dr. Chawla's May 2013 findings), and that although she complained of left knee pain, she had no functional limitations. (Tr. 29, 381). As ALJ Kirkpatrick specifically noted, Dr. Shallin overall found no functional limitations despite Wills's vague and unsubstantiated complaints. (Tr. 29).

Therefore, the undersigned finds that ALJ Kirkpatrick did not err in relying on Wills's application for unemployment benefits to give her testimony diminished weight. Rather, she properly considered several relevant factors, including Wills's application for unemployment benefits, the circumstances surrounding her job search and physical ability, daily activities, and medical evidence.[2] Credibility determinations are generally entitled to great deference. Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000), and in this case, the undersigned finds that ALJ

---

2   Willis also alleges that ALJ Kirkpatrick erred by not giving greater weight to her exemplary work history. However, like an application for unemployment benefits, work history is only one piece of the puzzle. ALJ Kirkpatrick correctly recounted Willis's work history, and therefore presumably considered it with the other relevant factors.

Kirkpatrick properly determined Wills's credibility, and that the credibility determination is supported by substantial evidence for the reasons listed above.

    2. ALJ's Residual Functional Capacity Determination

Residual functional capacity ("RFC") is defined as "the most you can still do despite your limitations" and has three components: physical abilities, mental abilities, and other impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Wills complains that the RFC finding is inconsistent—that ALJ Kirkpatrick states on page 5 of her decision that Wills has an RFC for a reduced range of *medium* work, but states on page 8 that her RFC is for a reduced range of *light* work. Wills also complains that ALJ Kirkpatrick erred in weighing the medical evidence and not adopting the State Agency medical reviewer's conclusion that she be limited to light work. Wills argues that ALJ Kirkpatrick did not explain her finding that she is capable of a reduced range of medium work, and disregarded evidence that showed she was limited to light work only.

The Commissioner responds that ALJ Kirkpatrick's single mention that Wills was capable of performing light work was a scrivener's error because later in her opinion she specifically stated that Wills was capable of medium-level work, and that she could return to her past relevant work, which is categorized as medium-level work. The Commissioner also argues that even assuming ALJ Kirkpatrick erred in finding Wills was capable of performing medium-level work, the vocational expert listed three jobs she could perform at the light-level of work.

A lengthy discussion of the evidence and issues surrounding ALJ Kirkpatrick's RFC determination is unnecessary. ALJ Kirkpatrick specifically stated that Wills had an RFC for medium-level work, and found that she could return to her past relevant work, which is classified as medium-level work. Accordingly, it seems that ALJ Kirkpatrick's single mention that Wills

be restricted to light work was in fact a scrivener's error.

Assuming this to be true, Wills still challenges the finding that she is capable of a reduced range of medium-level work—she argues that she should have been found to have an RFC for *light*-level work. In order for Wills to prevail on this point of error, she must show that ALJ Kirkpatrick's alleged error harmed her. See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003) (citing Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988)) (applying harmless error analysis in disability benefits context). In other words, Wills must prove that she cannot perform medium-level work or the light-level jobs identified by the vocational expert.

At the administrative hearing, ALJ Kirkpatrick posed a hypothetical question asking the vocational expert to assume that an individual had residual functional capacity for medium work, with limitations that included an ability to stand and walk for six hours combined out of an eight-hour day and sit for a total of six hours out of an eight-hour day, *inter alia*. (Tr. 94.) After the vocational expert identified several available jobs under that scenario, ALJ Kirkpatrick asked her to assume an individual had the same limitations, but was limited to light-level work. (Tr. 94-95.) The vocational expert identified several alternative and available jobs that such a person could perform under that hypothetical: short order cook, food assembler, and counter attendant.[3] (Tr. 95-96.)

Wills claims she cannot perform these jobs because they do not account for her sitting, walking, and standing limitations. However, Wills does not support this claim with any objective evidence. Although the State Agency consultative report limited her sitting, standing,

---

3  Upon cross examination, the vocational expert reduced the counter attendant and short order cook jobs by 25%, but even with this reduction, the vocational expert testified that Wills could still perform the job of food assembler, a job with 30,000 available positions in the state and 58,000 jobs nationally. (Tr. 95-96.)

and walking ability to six hours per day, respectively, that is within the exertion levels required by the jobs identified by the vocational expert. (Tr. 130) (Hypothetical included the statement that "[Wills] could stand and walk for six hours combined out of an eight-hour day and sit for a total of six hours out of an eight hour day"). Wills contends that the Dictionary of Occupational Titles for these positions do not require *any* sitting tasks, which conflicts with the vocational expert's testimony that Wills is capable of performing these jobs. However, Wills fails to mention that the jobs listed by the vocational expert comport with "light work" as defined by the pertinent regulations: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time* with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567 (emphasis added); see also Gutierrez v. Barnhart, 109 F. App'x 321, 327 (10th Cir. 2004) (holding that light work requires the ability to stand and/or walk for up to six hours a day, with intermittent sitting during the remaining time).

Moreover, the value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job. Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986) holding modified by Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000). Under governing

13

circuit law, an administrative law judge may in appropriate cases give greater weight to expert vocational testimony than to findings in the DOT. Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000). One obvious reason is that the DOT provides only standardized job information, whereas a vocational expert's testimony is tailored to an individual claimant's work skills as contained in an administrative law judge's hypothetical question. Gaspard v. Soc. Sec. Admin. Com'r, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009)

In this case, the vocational expert testified there are jobs available in the national economy that Wills can perform, but Wills's attorney neither cross-examined the vocational expert, nor provided any contrary evidence. The Fifth Circuit has held that where the claimant offers no evidence contrary to the vocational expert's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis. Perez v. Barnhart, 415 F.3d 457, 464 (5th Cir. 2005). Moreover, a plaintiff's subjective evidence will not take precedence over conflicting medical evidence. Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985).

Therefore, assuming *arguendo* that Wills is correct and that ALJ Kirkpatrick erred in limiting her to medium-level work instead of light, there are jobs at the light-level that she can perform. She failed to demonstrate prejudice arising from ALJ Kirkpatrick's alleged error, and therefore, the administrative decision should be affirmed. See Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981) (citing Pacific Molasses Co. V. Fed. Trade Comm'r, 356 F.2d 386 (1966)); see also Morton v. Ruiz, 415 U.S. 199 (1974) (holding that a plaintiff seeking judicial review must also demonstrate prejudice arising from that error to be entitled to relief).

## IV. Order

Wills failed to demonstrate that ALJ Kirkpatrick's decision lacks the support of substantial evidence, or that the Commissioner committed harmful legal error. Therefore, it is

**ORDERED** that the Plaintiff's action against the Defendant is **DISMISSED** and the decision of the Commissioner is **AFFIRMED**. Each party is assessed his or her respective costs.

SIGNED this 1st day of March, 2016.

_____
Zack Hawthorn
United States Magistrate Judge